## SANTA MONICA LUMBER & MILL CO. v. HEGE et al.*

### L. A. No. 158; March 10, 1897.

#### 48 Pac. 69.

**Mechanics' Liens—Proceedings to Perfect—Time of Filing.—** Where there was evidence that buildings were, in effect, completed before the claim of lien was filed, a finding to that effect will not be disturbed, though there was evidence of trifling imperfections remedied after such time.

**Mechanics' Liens—Landlord and Tenant—Notice.—**Where the owner of a lot gives permission to his tenant to erect a building

---

*For subsequent opinion in bank, see 119 Cal. 376, 51 Pac. 555.

thereon of a certain character, and the tenant does so, he had such knowledge of the intended construction of the building as to render a notice posted by him after the lien was filed, on visiting the premises, too late, under Code of Civil Procedure, section 1192, providing that buildings constructed on lands with the owner's knowledge shall be held to be constructed at his instance, and liable for a lien, unless, within three days after knowledge of the construction, he post notices thereon.

**Mechanic's Lien.**—In an Action to Enforce a Materialman's Lien, plaintiff can recover only for the materials furnished between the dates stated in the claim of lien, though the proof shows that materials were furnished on other dates.[1]

APPEAL from Superior Court, Los Angeles County; Waldo M. York, Judge.

Action by the Santa Monica Lumber and Mill Company, a corporation, against J. H. Hege and William Naumann, to enforce a materialman's lien. From a judgment in favor of plaintiff and from an order denying a new trial defendant Hege appeals. Reversed.

Clarence A. Miller for appellant; Tanner & Taft for respondent.

BELCHER, C.—This is an action to foreclose a lien for materials furnished for and used in the construction, alteration and repair of certain buildings on a lot of land in the town of Santa Monica, county of Los Angeles. Defendant Hege was the owner of the lot, and defendant Naumann was the lessee thereof. The materials were furnished by plaintiff upon the order of Naumann, and were of the alleged value of $244.59. Naumann suffered his default to be entered. Hege demurred to the complaint, and, his demurrer being overruled, answered. The case was tried, and the court found, among other things, that all the allegations of the complaint were true, except that $75 instead of $100, as stated therein, would be a reasonable attorney's fee, and, as conclusions of law, that there was "due to the plaintiff from the defendants the sum of $244.59, and the further sum of $1.45, expenses of recording said lien, and the further sum of $75, hereby allowed as attorney's fees; that defendant Dr.

---

1 Cited in note in 35 L. R. A., N. S., 908, on effect of addition of new items to extend time for filing mechanic's lien.

Wm. Naumann is personally liable therefor, and that the amounts aforesaid are, and each of them is, a valid lien against the real property described in the complaint, and of every part and parcel thereof, and plaintiff is entitled to a decree foreclosing its said lien against said real property." Judgment and decree were accordingly so entered, from which and from an order denying a new trial defendant Hege appeals. Several grounds for reversal are urged by appellant, but only the following need be noticed:

1. It is insisted that the claim of lien was prematurely filed, and hence that it conferred no rights. The statute provides that any person, save the original contractor, claiming the benefit of the chapter in regard to liens of mechanics and others upon real property, must "within thirty days after the completion of any building, improvement or structure, or after the completion of the alteration, addition to or repair thereof," file for record his claim of lien, etc., and that "any trivial imperfection in the said work, or in the construction of any building, improvement or structure, or of the alteration, addition to or repair thereof, shall not be deemed such a lack of completion as to prevent the filing of any lien," and also that "cessation from labor for thirty days" shall be deemed equivalent to a completion: Code Civ. Proc., sec. 1187. It has been held that the filing of a claim of lien before the time authorized by the statute is premature, and no right to enforce the lien is thereby acquired: Roylance v. Hotel Co., 74 Cal. 273, 20 Pac. 573; Schwartz v. Knight, 74 Cal. 432, 16 Pac. 235; Willamette Steam Mills Lumbering etc. Co. v. Los Angeles College Co., 94 Cal. 229, 29 Pac. 629. It was alleged in the complaint and the court found that "the said buildings and repairs were completed on the twenty-third day of July, 1894," and that on the eleventh day of August, 1894, the plaintiff duly filed its claim of lien, etc. We find in the record no evidence tending to show that the buildings and improvements were fully completed on the day named, or at what particular time they were completed. Plaintiff's witness Emerson testified that he worked as a carpenter on the buildings, and that he finished work in the latter part of June, "and the buildings were completed shortly after." And on cross-examination he testified that what he knew of matters that occurred after he quit work was what he saw on passing by the property, which was

nearly every day; that he did not see any person working on the buildings after the date he stated they were completed; and that he did "not know whether on August 11, 1894, any sidewalks had been laid on the premises, or whether the ridge of the roof had been closed, or was water-tight. The windows were puttied on the inside, but whether they were also puttied on the outside I do not know, or whether any cleats were on the windows, or whether the windows were rain tight, or whether all the battens were on the building, nor whether the bathtubs were entirely finished." Dr. Naumann testified for defendant that when the claim of lien was filed the buildings were unfinished in the particulars spoken of by Emerson, and in some other particulars, and that after August 11th he employed two or three workmen on the buildings for five or six days in all. Respondent contends that it is a case of conflicting evidence, and that under the settled rule in such cases the finding of the court cannot be disturbed, and also that the defects relied on were trivial imperfections, which could not prevent the filing of the lien. This contention, we think, should be sustained. The court below saw and heard the witnesses, and could determine better than we can whether the defects were in fact trivial imperfections, and the buildings were in effect completed before the claim of lien was filed.

2. The statute provides that every building constructed upon any lands with the knowledge of the owner shall be held to have been constructed at the instance of such owner, and the interest owned shall be subject to any lien filed in accordance with the provisions of the code, unless such owner shall, within three days after he shall have obtained knowledge of the construction, or the intended construction, give notice that he will not be responsible for the same, by posting a notice in writing, etc.: Code Civ. Proc., sec. 1192. The court found that "the said constructions and repairs were made and the said timber and materials were furnished by plaintiff with the full knowledge and consent of defendant Hege from their inception, and the said Hege gave no notice, by posting a notice in writing to the effect that he would not be responsible for the same, nor did he give any notice at all, either by posting or otherwise." Appellant contends that this finding was not justified by the evidence, but we think it must be sustained. It appears that Naumann was

a practicing physician, and that he leased the premises and took possession of them, with his family, consisting of his wife and six children, early in May, 1894. Appellant lived in Los Angeles, about sixteen miles away, and a week or ten days later he visited the place, and Naumann then asked of him permission to build another house on the lot. Appellant gave him permission to build a small shanty, half of wood and half of glass, far enough away from the dwelling already on the place not to interfere with it in any shape or manner, to be perfectly detached, in the rear of the lot, and without fire in or about it. And in the latter part of July, or first of August, Naumann wrote to appellant and asked permission to put up another building; and the latter answered that he might do so, but it must have no fire, and must not be attached to the house. Naumann proceeded to erect the buildings in controversy, and placed them in the rear of, and in part adjoining, the dwelling-house on the lot. A day or two after the claim of lien was filed, appellant again visited the place, and then posted notice that he would not be responsible. Under these circumstances, we think it must be held that appellant had knowledge of the construction or the intended construction of the buildings, and that his notice was not posted in time. And the fact that the buildings were not placed on the rear end of the lot, and perhaps were not constructed as appellant intended they should be, cannot be availed of, as against the respondent, that knew nothing of his intentions in these respects.

3. It is stated in respondent's claim of lien that "on or about the first day of July, 1894," Dr. Naumann, as lessee of said premises, entered into a contract, not in writing, with the Santa Monica Lumber and Mill Company, under and by which said company furnished said lumber and materials, and that said contract was fully performed on the part of said company, and was completed on July 14, 1894. It is alleged in the complaint that the contract was entered into on the first day of July, but in the findings the language used is the same as in the claim of lien. At the trial it was proved, on behalf of the plaintiff, that its first charge for materials furnished was made on May 24th, and its last on July 14th; that the aggregate of its charges was $419.59, of which sum $175 had been paid, leaving still due and unpaid $244.59; and that after June 25th there were only four

charges, which were made in July, and amounted to $29.02, and the payments after that date amounted to $115. Appellant contends that, at most, he could be held responsible only for the materials furnished between the dates named in the claim of lien; and in support of this contention he cites the case of Goss v. Strelitz, 54 Cal. 640. That was an action to foreclose a lien for materials furnished for the construction of a building, and in the claim of lien it was stated that the materials were furnished between February 20 and April 14, 1877. It appeared that some of the materials were furnished before February 20th, but it was held that the plaintiff was entitled to recover only for the materials furnished between the dates stated in the claim. That case seems to be directly in point here, and under the law as there declared the respondent was not entitled to recover for materials furnished before, "on or about the first day of July." The words "on or about" leave the time when the contract was made somewhat indefinite and uncertain, but we think the language used cannot be held to extend back to the 24th of May, and that it should be limited to time alleged in the complaint. It follows that the judgment and order appealed from should be reversed and the cause remanded for a new trial.

We concur: Searls, C.; Britt, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and the cause remanded for a new trial.